```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
                                                ELECTRONICALLY FILED
                                                DOC #:
                                                DATE FILED: 12/1/2017
```

------------------------------------------------------------X
                                          :
DOUGLAS J. GRANT,                         :
                              Plaintiff,  :
                                          :        16 Civ. 9553 (LGS)
            -against-                     :
                                          :        **OPINION AND ORDER**
COMMUNICATIONS WORKERS OF                 :
  AMERICA, LOCAL 1101, et al.,            :
                              Defendants. :
                                          :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Douglas J. Grant commenced this action against Communications Workers of America (sometimes referred to herein as "CWA"), Local 1101 (the "Local Union"), Communications Workers of America, District 1 (the "District Union") and Communications Workers of America National (the "National Union") (together, "Defendants").[1] Plaintiff alleges violations of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* ("LMRDA") and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* and a breach of the duty of fair representation.[2] Defendants move to dismiss the Complaint under

---

[1] The Complaint also names as defendants John Does 1–20. At a conference held on September 5, 2017, Plaintiff identified the Doe defendants as Keith Purce and William Nebeling, both of whom were originally named defendants and removed from the Amended Complaint. As Plaintiff has not made any attempt to amend the Amended Complaint to name any other previously unknown party despite having ample time and opportunity to do so, the Doe defendants are dismissed. *See Scott v. City of Mt. Veron*, No. 14 Civ. 4441, 2017 WL 1194490, at *33 (S.D.N.Y. Mar. 30, 2017) (collecting cases); *see also Oxman v. Oxman*, No. 16 Civ. 1304, 2017 WL 4078114, at *1 n.1 (D. Conn. Sept. 13, 2017) (dismissing John and Jane Does 1–20 because "there [was] no reference to a Jane or John Doe defendant in any of the factual allegations within the Second Amended Complaint" and therefore "the plaintiff . . . failed to state a colorable claim against any Doe defendant").

[2] At the September 5, 2017, conference, Plaintiff voluntarily withdrew his claims for violations of the Rehabilitation Act, 29 U.S.C. § 710 *et seq.*, Title VII, 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-107.

Federal Rules of Civil Procedure 12(b)(1) (the District Union and National Union) and 12(b)(6) (Defendants). The motion is granted in part and denied in part.

I.  BACKGROUND

The following alleged facts are drawn from the Amended Complaint, documents incorporated in it by reference and pro se Plaintiff's statements at a conference held on September 5, 2017[3] (together, the "Complaint"), and are accepted as true for purposes of this motion. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016); *see also Alsaifullah v. Furco*, No. 12 Civ. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) ("[W]here a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint.") (internal quotation marks omitted and italics in original).

A.  **Plaintiff's August 2013 Suspension**

Plaintiff is an employee of AT&T Mobility ("AT&T") in Paramus, New Jersey and a member of the Local Union since December 2005. In August 2013, Plaintiff was a business agent for AT&T -- a position in which Plaintiff managed the union's daily business matters and functioned as a liaison between the union and management. In August 2013, Plaintiff was suspended for one day from his position as business agent, allegedly for petitioning union members about AT&T's ongoing contract negotiations.

B.  **Plaintiff's September 2013 Suspension, Trial and Appeal**

On September 26, 2013, Plaintiff was suspended as business agent because of internal charges that chief stewards Sarrah Nasser and Bill Nebeling filed against Plaintiff on September

---

[3] An approximately two-hour conference was held on September 5, 2017, to clarify the alleged facts stated in the Amended Complaint and the bases for the Amended Complaint's causes of action. The Court deems Plaintiff's statements from the September 5, 2017, to be part of the Amended Complaint. All alleged facts are construed in the light most favorable to Plaintiff.

2

13, 2013, and September 18, 2013, respectively. Nebeling accused Plaintiff of harassment based on Nebeling's disability, and Nasser accused Plaintiff of gender discrimination. Although Nebeling and Nasser failed to allege specific dates and offense conduct, the Executive Board did not require them to amend their complaints, as required by Article XX, Section 2 of the CWA Constitution. The Complaint alleges that members of the Local Union misled District Union officials to get approval for Plaintiff's suspension.

The Local Union chose Mike Cefalo to serve as prosecutor to investigate Nasser's gender discrimination complaint against Plaintiff. Cefalo did not meet with Plaintiff until October 21, 2013. When they met, Cefalo would not take Plaintiff's statement or allow Plaintiff to participate in pre-trial discovery. Cefalo also did not give Plaintiff complete charges and at least some of the evidence supporting them until the day of the trial, November 13, 2013, preventing Plaintiff from preparing adequately. The Local Union denied Plaintiff's request to adjourn and conducted the trial without Plaintiff's being present. Plaintiff was found guilty.

Plaintiff appealed to the National Union, which, on March 21, 2014, vacated his suspension and reinstated him as business agent. On March 28, 2014, Plaintiff sent a letter to Secretary-Treasurer Annie Hill regarding omissions in the National Union's decision. On March 31, 2014, Hill referred the matter to then-District Union Vice President Chris Shelton, who called a meeting with the Local Union Executive Board, Assistant to the Vice President Dennis Trainor and Plaintiff to settle outstanding issues, including Plaintiff's pending case before Judge Furman in this District. At the April 2014 meeting, Shelton addressed the issues Plaintiff raised in his letter to Hill. The Local Union agreed to dismiss Nebeling's pending internal complaint, but said that it could not force Nebeling to withdraw his related EEOC complaint. Because of the settlement, Plaintiff did not oppose the Local Union's motion to dismiss, which Judge

Furman granted on July 15, 2014. *Grant v. Commc'ns Workers of Am., Local 1101*, No. 13 Civ. 7917, 2014 WL 3439670 (S.D.N.Y. July 15, 2014).[4]

## C. Heather Trainor's Cell Phone

In or around the summer of 2014, Plaintiff requested a cell phone replacement for his AT&T union line and learned that it had been given to Heather Trainor, who was not a Local Union Executive Board member. Only Executive Board members were entitled to have a cell phone. Plaintiff filed an internal complaint about Trainor's cell phone on January 29, 2015. The National Union appointed John Dempsey as prosecutor to investigate the complaint.

On June 29, 2015, Dempsey found that there was no probable cause to pursue Plaintiff's complaint about Trainor's cell phone. On July 27, 2015, Plaintiff appealed to the National Union, arguing that Dempsey had manipulated the Local Union's Bylaws in reaching his decision. On September 25, 2015, Plaintiff's appeal was denied. Plaintiff appealed the denial to the CWA President's meeting in 2016. The National Appeals Tribunal recommended that a prosecutor from a different district be appointed; but the CWA President's rejected its recommendation.

## D. Plaintiff's 2016 Trial and Appeal

Around July 2015, after Plaintiff was no longer a Local Union Executive Board member,

---

[4] In *Grant v. Communications Workers of America, Local 1101*, Plaintiff sued the Local Union for racial discrimination, violations of the LMRDA based on his 2013 suspension and trial and the duty of fair representation. 2014 WL 3439670, at *1. The Court dismissed the racial discrimination claim for failure to state a claim; dismissed without prejudice the LMRDA claims for failure to exhaust; and dismissed the fair representation claim because Plaintiff's union membership and work for AT&T were not affected by the Local Union's handling of internal relations between the Local Union and its members. *Id.* at *2–3. Here, although some of the LMRDA claims are based on the same allegations (the September 2013 and subsequent gender discrimination trial), those claims were dismissed without prejudice. *Id.* at *2. The duty of fair representation claim is based on conduct that occurred after Plaintiff filed the Complaint in the earlier action.

4

Plaintiff learned that AT&T had changed its "Exchange Time" policy, which allows AT&T employees to adjust their work schedules if they make up lost time in the same work week. Plaintiff asked then-chief steward Nebeling to file a grievance against AT&T with the Local Union. Nebeling did not file it immediately, and Nebeling and Heather Trainor ignored Plaintiff's requests for updates. On August 28, 2015, Plaintiff filed a National Labor Relations Board ("NLRB") complaint against the Local Union for retaliation in connection with their handling of his inquiries about the Exchange Time policy.

In September 2015, Plaintiff approached then-business agent Heather Trainor during a Local Union election to ask about the status of the Exchange Time grievance. Trainor was condescending and told Plaintiff that she was not afraid of the NLRB. Plaintiff also asked Nebeling unsuccessfully about the grievance. Plaintiff filed an internal complaint about Trainor's behavior and both her and Nebeling's failure to respond to his inquiries about the grievance. In retaliation, Nebeling filed internal charges against Plaintiff, accusing Plaintiff of workplace violence for pointing his finger like a gun and saying "pow pow." Nebeling said that he "was petrified for [his] safety." The Local Union then assigned Peter Ficorelli as prosecutor to investigate Nebeling's allegations against Plaintiff. On November 17, 2015, Plaintiff filed charges against the Local Union's Executive Committee alleging conspiracy to allege that Plaintiff engaged in workplace violence.

On December 23, 2015, Plaintiff received a copy of the charges Nebeling filed against him for workplace violence, which lacked the specificity that the CWA Constitution requires. Local Union officials refused to provide Plaintiff their findings when recommending that the charges be pursued and withheld information until the trial. They also refused to allow him to participate in pretrial discovery and withheld information Plaintiff needed to prepare adequately

5

for trial. A trial was held on July 14, 2016. Plaintiff was not permitted to cross-examine certain witnesses. Plaintiff was found guilty. The National Union denied Plaintiff's appeal.

## II. LEGAL STANDARD

Under Rule 12(b)(1), dismissal of a claim for lack of subject matter jurisdiction "is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt.*, 722 F.3d 78, 80 (2d Cir. 2013) (internal quotation marks omitted).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016) (internal quotation marks omitted). The "court[] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 61 n.5 (2d Cir. 2016) (quoting *Twombly*, 550 U.S. at 555)).

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."

6

*Id.* at 156–57 (internal quotation marks omitted).

## III. DISCUSSION

### A. Claims Against the District Union and National Union

To the extent that the Complaint's claims against the District Union and National Union are based on their alleged failure to intervene in the Local Union's affairs, those claims fail because a district or national union, like an international union, is liable for the acts of its local chapters only if it ratifies its wrongful conduct. "An international union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can.*, 973 F.2d 1050, 1061 (2d Cir. 1992) (quoting *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 217–18 (1979)); *accord D'Onofrio v. City of New York*, No. 07 Civ. 0731, 2007 WL 2994269, at *3 (E.D.N.Y. Oct. 11, 2007). "The international is liable if it . . . having knowledge of the material facts . . . evidences an intention to ratify" the conduct of the local. *Phelan*, 973 F.2d at 1062. "Whether the parent union is an international union or merely a national union is immaterial to the agency analysis." *Baird v. Holway*, 539 F. Supp. 2d 79, 92 (D.D.C. 2008)); *see also Carbon Fuel Co.*, 444 U.S. at 218 (vacating the judgments against the district and international unions and agreeing with the Court of Appeals that there was "no evidence . . . that either the District or International Union instigated, supported, ratified, or encouraged any of the work stoppages"). The Complaint alleges no facts suggesting that the National Union had knowledge of the Local Union's allegedly unlawful acts or that it participated in or endorsed them. To the contrary, the Complaint suggests that the National Union reversed the Local Union's decisions on multiple occasions, including in August 2013 and March 21, 2014, when it overturned Plaintiff's

suspensions. Similarly, the Complaint's bare allegations that the District Union acted in a biased manner are insufficient to suggest that the District Union ratified the Local Union's allegedly wrongful conduct.

The only facts alleged respecting the District Union and National Union, other than their respective failures to intervene, are that they failed to investigate properly and pursue Plaintiff's complaints, for example, regarding Heather Trainor and Plaintiff's access to payroll records based on prosecutor Dempsey's "biased" investigation. The Complaint's bare allegations of bias, discriminatory behavior and animus are insufficient to state a claim against either the District Union or National Union. As the Complaint fails to allege sufficient facts respecting the District Union and National Union as to any cause of action, those parties are dismissed.

### B.  Claims Against the Local Union

#### 1.  LMRDA § 101(a)(2)

The Complaint alleges that the Local Union suppressed Plaintiff's right to free speech in violation of LMRDA § 101(a)(2). 29 U.S.C. § 411(a)(2). This claim is dismissed because, construing the Complaint broadly, it fails to allege sufficient facts to sustain the claim.

Section 101(a)(2) guarantees "[e]very member of any labor organization . . . the right to meet and assemble freely with other members; and to express any views, arguments, or opinions . . . ." *Id.* The purpose of this section is "to encourage democratic self-governance in unions as well as to correct widespread abuses of power and instances of corruption by union officials." *Kazolias v. IBEWLU 363*, 806 F.3d 45, 51 (2d Cir. 2015) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff alleging a violation of § 101(a)(2) must allege sufficient facts to suggest that the defendant's conduct was "part of a calculated and deliberate scheme to discourage dissent" among union members, rather than "ad hoc personal retaliation" against the plaintiff. *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178,

8

185 (2d Cir. 1998); *accord Sampson v. Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, No. 10 Civ. 8120, 2012 WL 4471535, at *4 (S.D.N.Y. Sept. 27, 2012). Title I's protections extend only to "speech of significant concern to the union membership as a whole." *Kazolias*, 806 F.3d at 52; *see also Sampson*, 2012 WL 4471535, at *4 (rejecting § 101(a)(2) claim, in part, because "Plaintiff cannot show that he was disciplined in retaliation for protected speech because his statements relate to the conduct of the [trial] proceedings and the specific charges against him").

The Complaint does not allege sufficient facts to suggest that the Local Union violated Plaintiff's right of free speech under LMRDA. At the September 5, 2017, conference, Plaintiff clarified that the bases for this claim are (1) Plaintiff's one-day suspension in August 2013 for petitioning Local Union members, and (2) Nebeling's failure to respond to Plaintiff's inquiries about the Exchange Time grievance and filing a complaint against Plaintiff for the election day incident in September 2015, which Plaintiff perceives as an act of intimidation. Construing the Complaint broadly also to allege that Plaintiff's August 2013 suspension was in retaliation for his petitioning the Local Union's members, this claim fails. Even assuming that the subject of Plaintiff's petition concerned the union membership as a whole, the Complaint fails to allege any facts (other than temporal proximity) to suggest that Plaintiff's speech was the reason he was suspended. Also, to the extent the free speech claim is based on the August 2013 suspension, it is barred by the applicable three-year statute of limitations that applies to causes of action under § 101(a)(2). *Phelan*, 973 F.2d at 1061 (holding that a three-year statute of limitations period applies to actions brought under § 101(a)(2)); *Corley v. Farrell*, No. 16 Civ. 3367, 2016 WL 3950080, at *3 (E.D.N.Y. July 19, 2016).

Regarding the Exchange Time grievance, the Complaint alleges no facts suggesting that

Plaintiff was engaged in speech of significant concern and directed to the union membership as a whole. Although AT&T's Exchange Time policy may have been of interest to some union members, the Complaint fails to plead sufficient facts suggesting that Plaintiff's complaints to union officials were ever communicated to other union members, or that Nebeling's filing a complaint against Plaintiff for workplace violence was part of a calculated and deliberate scheme to discourage dissent. *See Leavey v. Int'l Bhd. of Teamsters -- Theatrical Teamsters Local Union No. 817*, No. 13 Civ. 0705, 2015 WL 5802901, at *9 (S.D.N.Y. Oct. 5, 2015) (granting summary judgment on LMRDA free speech claim because plaintiff's complaints, letters and grievances directed to union officials did not qualify as free speech). "The LMRDA was designed to protect the integrity of union governance, not to turn nearly every criticism by a union member regarding an official's conduct . . . into a federal case." *Kazolias*, 806 F.3d at 52–53 (internal quotation marks omitted and alterations in original). This claim is dismissed.

### 2. LMRDA § 101(a)(5)

The Complaint alleges that Plaintiff's suspension in September 2013 and union trials in 2013 and 2016 violated LMRDA § 101(a)(5). The motion to dismiss this claim is denied.

Section 101(a)(5) states: "No member of any labor organization may be fined, suspended, expelled, or disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; and (C) afforded a full and fair hearing." "[A] union has the power to discipline members by suspending them from union privileges for a reasonable period provided they had violated a legitimate rule aimed at preventing disruption of union business and been afforded a full and fair hearing." *Hughes v. Bricklayers & Allied Craftworkers Local No. 45*, 386 F.3d 101, 105 (2d Cir. 2004) (internal quotation marks omitted). "Section 101(a)(5) of the LMRDA does not require that union disciplinary hearings incorporate

the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence." *Piacente v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 11 Civ. 1458, 2015 WL 5730095, at *14 (S.D.N.Y. Sept. 30, 2015) (internal quotation marks omitted).

Respecting the 2013 trial, the Complaint alleges that Plaintiff was suspended from his position on the Local Union Executive Board, in September 2013, before a prosecutor was assigned to his case, or sought to obtain his (Plaintiff's) statement. The Complaint further suggests that members of the Local Union misled District Union officials to get approval for Plaintiff's suspension. The Complaint further alleges that the Local Union deprived Plaintiff of a full and fair hearing by failing to provide him with the complete charges, including specific dates, and certain evidence supporting them until the day of the trial, which prevented Plaintiff from preparing adequately. The Complaint further alleges that the trial was conducted without Plaintiff present, and Plaintiff was found guilty.

Respecting the 2016 trial, the Complaint alleges that the Local Union failed to provide Plaintiff with complete charges and evidence he needed to mount a defense and refused to allow him to cross-examine certain witnesses at trial. Plaintiff again was found guilty. These allegations are sufficient to state a claim under § 101(a)(5). *See id*. at *12 (noting that "[a]t a minimum, the accused should be informed of the nature of the offense, the circumstances surrounding the alleged infraction and, as nearly as may reasonably be ascertained, the time and place of the occurrence") (internal quotation marks omitted and alteration in original). Courts in the Second Circuit have recognized that "[a] union member subject to internal disciplinary proceedings is entitled to an impartial trial body which arrives at its decision on the basis of evidence that the accused has an opportunity to rebut, . . . [as well as] adequate notice and a

reasonable opportunity to defend, including the right to confront an accuser, to present evidence and to cross-examine witnesses." *Id.* at *10 (citations and internal quotation marks omitted). Construing the alleged facts in Plaintiff's favor, the Complaint pleads sufficient facts to support an inference that the two trials failed to meet this standard.

### 3. Claim Under LMRDA § 501(b)

The Complaint fails to state a claim under LMRDA § 501(b) -- which creates a cause of action against union officers who violate § 501(a) -- because Defendants are not union officers. 29 U.S.C. § 501(b); *Commer v. Am. Fed'n. of State, Cty. and Mun. Emps., Dist. Counsel 37*, 390 F.3d 203, 204–05 (2d Cir. 2004); *accord Gillis v. Wilhelm*, No. 09 Civ. 1116, 2010 WL 1375167, at *2 (S.D.N.Y. Mar. 29, 2010).

Section 501(a) states that union members must "hold [the union's] money and property solely for the benefit of the organization and its members and . . . manage, invest, and expend [it] in accordance with [the union's] constitution and bylaws." 29 U.S.C. § 501(a). "A LMRDA Section 501 claim cannot be brought against labor organizations." *Commer*, 390 F.3d at 204 (citing *Head v. Bhd. of Ry., Airline and S.S. Clerks, Freight Handlers, Express & Station Emps. (BRAC)*, 512 F.2d 398, 398 n.1 (2d Cir. 1975) ("[I]t is clear that § 501 does not provide for an action against . . . a labor organization . . . ."). Before filing suit under § 501(b), a plaintiff must make a demand upon the union to sue, and that demand must not have been acted upon within a "reasonable time." 29 U.S.C. § 501(b); *see Gillis*, 2010 WL 1375167, at *2. "No . . . proceeding [against a union officer] shall be brought except upon leave of the court . . . and for good cause shown." *Gillis*, 2010 WL 1375167, at *1 n.1 (quoting 29 U.S.C. § 501(b)).

The Complaint fails to state a claim under § 501(b) because Defendants are not proper parties, and the Complaint fails to allege that Plaintiff satisfied the prerequisites to filing suit under that statute. *See, e.g.*, *D'Antonio v. Metro. Transp. Auth.*, No. 06 Civ. 4283, 2010 WL

1257349, at *8 (S.D.N.Y. Mar. 31, 2010) ("Defendants TWU, the Union, and AFL–CIO are unions, not union officials, and thus cannot be sued pursuant to Section 501."); *Commer*, 390 F.3d at 204–05 (affirming dismissal of claim under § 501(b) against individual union officers where plaintiff did not make an adequate demand on the union to commence legal action). Therefore, this claim is dismissed.

    **4.  Claim Under LMRDA § 609**

Construing the Complaint broadly, it fails to state a claim based on a violation of § 609 of the LMRDA, 29 U.S.C. § 529. Like the free speech claim, this claim is based on the August and September 2013 suspensions and the workplace violence charges that Nebeling filed against Plaintiff in 2015, allegedly for inquiring about the Exchange Time grievance. This claim fails because the facts pleaded in the Complaint are insufficient to support a § 609 claim.

Section 609 prohibits unions from fining, suspending, expelling or otherwise disciplining members for engaging in activities that are protected under Title I of the LMRDA. 29 U.S.C. § 529. Generally, discipline and removal "from appointive union employment is not within the scope of those union sanctions explicitly prohibited by § 609." *Finnegan v. Leu*, 456 U.S. 431, 439 (1982); *accord Sampson*, 2012 WL 4471535, at *4. The Second Circuit has recognized an exception to this rule where a plaintiff proves that the discipline "was part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out." *Maddalone*, 152 F.3d at 184.

The Complaint fails to plead sufficient facts to support an inference that the Local Union's suspending Plaintiff -- on either occasion -- "was part of a calculated attempt to suppress dissenting views within the union." *Id.* at 185; *see also Dilacio v. N.Y.C. Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 585 (S.D.N.Y. 2008) (finding plaintiff could not state a claim for retaliation under Title I because the complaint was "devoid of

13

any specific facts . . . demonstrating a union plan to suppress dissent among union members . . . ."). Nor does the Complaint allege sufficient facts suggesting that the Local Union pursued Nebeling's workplace violence charges because Plaintiff engaged in a protected activity. *See, e.g.*, *Leavey*, 2015 WL 5802901, at *9 (plaintiff's complaints, letters and grievances directed to union officials did not qualify as free speech); *Corley*, 2016 WL 3950080, at *3 (dismissing claim under § 609 where plaintiff failed to allege any facts to support the claim that union members and officials violated his rights under 29 U.S.C. § 411(a) and 29 U.S.C. § 529). Because the Complaint alleges insufficient facts to suggest that Plaintiff was disciplined to suppress intra-union dissent or for engaging in a protected activity, this claim fails.

### 5. Claim Under LMRDA § 610

Insofar as the Complaint alleges a violation of LMRDA § 610, this claim is dismissed because § 610 is a criminal provision that does not create a private cause of action. 29 U.S.C. § 530; *Grant*, 2014 WL 3439670, at *2 n.3 (rejecting § 610 claim because that provision does not create a private civil cause of action) (relying on *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 94 n.17 (1989)).

### 6. Claims Under Labor Management Relations Act ("LMRA") § 301

The Complaint alleges breach of contract against the Local Union for disciplining Plaintiff in violation of the CWA Constitution and Local Union Bylaws. The motion to dismiss this claim is denied with respect to alleged violations of the CWA Constitution, and granted with respect to alleged violations of the Local Union Bylaws.

LMRA § 301 states: "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States . . . ." 29 U.S.C. § 185(a). "Section 301 has been liberally interpreted to extend beyond suits involving an employer and union to include suits by and against individual employees to

enforce uniquely personal rights." *Commer v. Am. Fed'n. of State, Cty. & Mun. Emps., Dist. Counsel 37*, 272 F. Supp. 2d 332, 338 (S.D.N.Y. 2003) (internal quotation marks omitted), *aff'd*, 390 F.3d 203.

The Complaint alleges that Plaintiff's suspension and two trials violated the CWA Constitution because the Local Union failed to comply with its procedural provisions. Where, as here, the complaint alleges a due process violation based on a parent union constitution's procedural provisions, such a claim "is actionable only if the violation deprived the party of a full and fair hearing . . . ." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 380, 387 (2d Cir. 2001); *accord Piacente*, 2015 WL 5730095, at *10. "A court considering a claim for relief . . . because a party alleges that an internal union disciplinary hearing violated the union's constitution must conduct a two-step inquiry: (1) the court must find that the hearing violated the constitution; and (2) it must find that the violation deprived plaintiffs of a fair trial within the meaning of the [statute]." *Int'l Bhd. of Teamsters*, 247 F.3d at 387; *accord United States v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d 447, 459–60 (S.D.N.Y. 2009). Here, the Complaint states a claim based on alleged procedural violations of the CWA Constitution for substantially the same reasons that the Complaint states a claim under LMRDA § 101(a)(5) for alleged violations of Plaintiff's right to a full and fair hearing.

Insofar as the § 301 claim is based on alleged violations of the Local Union Bylaws, it is dismissed for lack of subject matter jurisdiction. "[A] suit properly brought under § 301 must be for a violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations." *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 99 (1991). While an international union's constitution is considered to be an inter-union contract that is

15

subject to § 301, "union members' disputes regarding breaches of local union constitutions do not fall within the boundaries of § 301 because such disputes are between an individual member and a union." *Dinuzzo v. Local 79, Laborers Int'l Union of N. Am., AFL-CIO*, No. 03 Civ. 4112, 2003 WL 21378596, at *3 (S.D.N.Y. June 16, 2003); *see also Bermingham v. Castro*, 191 F.3d 459, at *1 (9th Cir. 1999) (summary order) (holding that courts lack jurisdiction under § 301 to adjudicate disputes arising out of a local union constitution because it is a contract between the union members and the local union). Because federal courts lack jurisdiction under § 301 to adjudicate a dispute between an individual member and a union for alleged violations of a local union's constitution or bylaws, any claims arising out of the Local Union's alleged breach of its Bylaws are dismissed. *See, e.g.*, *Sampson*, 2012 WL 4471535, at *7 (dismissing § 301 claim based on local union constitution for lack of subject matter jurisdiction).

### 7. Breach of the Duty of Fair Representation

Construing the alleged facts in Plaintiff's favor, the duty of fair representation claim fails because it is untimely. "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (internal quotation marks omitted). "To prove that a union has breached its duty of fair representation, the challenging members must . . . prove that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith . . . [and] demonstrate a causal connection between the union's wrongful conduct and their injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010). "[T]he limitations period for filing such a claim in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014). "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs *knew* or reasonably *should have*

*known* that such a breach of the duty of fair representation had occurred . . . ." *Id.* (internal quotation marks omitted and emphasis in original).

The fair representation claim, which is based on the Local Union's alleged obstruction as to the Exchange Time grievance, is barred by the statute of limitations. The Complaint alleges that, in July 2015, Plaintiff learned that AT&T changed its Exchange Time policy, and that Plaintiff's request that Nebeling file a grievance against AT&T was ignored. The Complaint also alleges that, in August 2015, the Local Union would not assist Plaintiff to obtain a meeting with AT&T. As a result, in August 2015, Plaintiff filed against the Local Union an NLRB complaint, which he amended in December 2015. Even if the alleged facts could support a fair representation claim, this claim fails because Plaintiff's "bringing of the NLRB charge establishes that he had actual knowledge of the breach" no later than December 2015 -- almost a year before he filed the Complaint on December 9, 2016. *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003); *accord Conner v. Elmhurst Dairy, Inc.*, No. 13 Civ. 4769, 2016 WL 126373, at *2 (E.D.N.Y. Jan. 11, 2016). Therefore, this claim is dismissed because it is barred by the six-month statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The claims against the Local Union arising under § 101(a)(5) of the LMRDA and § 301 of the LMRA for violations of the CWA Constitution survive, and the remaining claims are dismissed. The District Union and National Union are dismissed from the action. The Clerk of Court is directed to close the motions at Docket Nos. 37 and 41 and mail a copy of this Opinion to pro se Plaintiff.

Dated: December 1, 2017
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE