USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/29/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                :
DOUGLAS J. GRANT,               :
             Plaintiff,  :
                :     16 Civ. 9553 (LGS)
      -against-     :
                :     **OPINION AND ORDER**
COMMUNICATIONS WORKERS OF     :
AMERICA, LOCAL 1101, et al.,     :
            Defendants.  :
                :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Communications Workers of America, Local 1101 ("Defendant" or the "Local Union"; sometimes referred to herein as "CWA"), the sole remaining Defendant in this action, moves for summary judgment on the two outstanding claims against it -- one claim under the Labor Management Reporting Disclosure Act ("LMRDA") § 101(a)(5), 29 U.S.C. § 411(a)(5); and one claim under the Labor Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185. Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

The facts below are drawn from the parties' Rule 56.1 Statements and other submissions on this motion and are construed in favor of Plaintiff as the nonmoving party. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017).

### A. Plaintiff's 2013 Suspension & Trial

Pro se Plaintiff Douglas J. Grant is an employee of AT&T Mobility ("AT&T") in Paramus, New Jersey, and a member of the Local Union since about January 2006. In September 2013, Plaintiff was a business agent for AT&T -- a position in which Plaintiff managed the Union's daily business matters and functioned as a liaison between the Union and

management.

On September 26, 2013, the Local Union Executive Board suspended Plaintiff as business agent because of internal charges that Local Union members Sarrah Nasser and Bill Nebeling brought against Plaintiff on September 13, 2013, and September 18, 2013, respectively. Nasser accused Plaintiff of gender discrimination and creating a hostile work environment, and Nebeling accused Plaintiff of harassment based on Nebeling's disability. Plaintiff received a copy of Nasser's and Nebeling's charges. The Nasser charging documents are a letter of accusation from Nasser and a list of the provisions of the CWA Constitution that Plaintiff was accused of violating. Nasser's letter, which was the basis for Plaintiff's 2013 trial, describes at length Nasser's feelings about Grant, but states only the following about his alleged misconduct: "He has gone out of his way to make my working environments uncomfortable . . . . In the past he has made comments about how nice I looked or that he was 'recklessly eyeballing me.'"

On September 25, 2013, the Local Union assigned Michael Cefalo to serve as prosecutor to investigate the charges. Cefalo interviewed Plaintiff on October 21, 2013, but he (Cefalo) terminated the interview because Plaintiff insisted on giving a detailed statement and presenting evidence. Cefalo told Plaintiff to "save that for a trial."

On November 8, 2013, Plaintiff learned that Cefalo had found sufficient cause to proceed with Nasser's charges and that an internal union trial would be held on November 13, 2013, at 6:00 p.m. The day before the trial, Plaintiff met with Local Union Secretary Treasurer Kevin Condy, who offered to postpone the trial. Plaintiff twice insisted that the trial proceed as scheduled because he was anxious about his suspension and did not know the extent of the charges. Condy told Plaintiff that he would make evidence available to Plaintiff no later than noon the following day.

On November 13, 2013, at 10:08 a.m., Plaintiff emailed Cefalo a list of eleven requests for information to assist Plaintiff to prepare his defense.[1] At 10:27 a.m. Cefalo responded, "Contact Keith Purce. I left a copy with him of everything you need." Cefalo and Plaintiff exchanged emails throughout the day, with Plaintiff insisting that Cefalo provide the information Plaintiff had requested and Cefalo referring Plaintiff to Purce. Plaintiff picked up the evidence that Condy had left for him -- fewer than ten pages of material -- after 4:00 p.m. Plaintiff emailed and called Cefalo multiple times before 6:00 p.m. to request an adjournment but did not reach him. Plaintiff did not appear for the trial, which, consistent with the CWA Constitution, was held in his absence. On November 13, 2013, a jury of CWA members found Plaintiff guilty of Nasser's charges, suspended him from "good standing" membership in the CWA for one year effective November 14, 2013 and directed him to take a "sensitivity training" class.

On November 20, 2013, Plaintiff appealed to the Local Union Executive Board. By letter dated December 20, 2013, Condy informed Plaintiff that his one-year suspension had been reduced to six months. Plaintiff then appealed to the National Union, which, by letter dated March 21, 2014, informed Plaintiff that the decision was reversed and the penalties vacated.

---

[1] Specifically, Plaintiff requested the following:
    A. Outline of each step of the case as it is intended to be presented to the court.
    B. Summarize the important facts
    C. List each witness in the order they are to testify
    D. Indicate along with each witness' name just what is to be proved by his/her testimony.
    E. Summarize each witness' story
    F. Arrange the signed statements of witnesses in the order they are to testify
    G. Arrange documents in the order they are intended to be used and indicate what is intended to be proved by each document
    H. Summarize the allegations contained in the charges
    I. Indicate the provisions in the Constitution or Bylaws which are relied on in each allegation
    J. Indicate the dates of each allegation in the charges
    K. Indicate the relief sought from the trial.

### B. The 2014 Settlement

After the conclusion of Plaintiff's appeal, Plaintiff met with Local Union representatives to settle all outstanding issues, including Plaintiff's then-pending case before Judge Furman in this District. The claims in that action included that Plaintiff's 2013 suspension and trial violated the LMRDA and the CWA Constitution. The Local Union agreed to withdraw Nebeling's internal union charge, but said that it could not force Nebeling to withdraw his related EEOC complaint. Because of the settlement, the Local Union never tried the Nebeling charge and defended Plaintiff as its employee before the EEOC until Nebeling withdrew his complaint. Plaintiff never formally dismissed his pending case before Judge Furman, but because of the settlement, he did not oppose the Local Union's motion to dismiss, which Judge Furman granted on July 15, 2014. *Grant v. Commc'ns Workers of Am., Local 1101*, No. 13 Civ. 7917, 2014 WL 3439670 (S.D.N.Y. July 15, 2014). The claims under the LMRDA were dismissed without prejudice. *Id.*

### C. Plaintiff's 2016 Trial

On September 30, 2015, the Local Union held an election for steward at the AT&T call center in Paramus, New Jersey. During the election, Plaintiff approached chief stewards Heather Trainor and Nebeling about grievances that Plaintiff had filed. Nebeling and Plaintiff became involved in a verbal altercation. Between September 30 and October 8, 2015, the Local Union collected statements from witnesses who described Plaintiff as "yelling" and "badgering" Nebeling, making "gun motions" and "gun noises" at him, and yelling at and making "gun gestures" at Trainor.

On October 18, 2015, Nebeling filed a formal charge against Plaintiff alleging that Plaintiff had "continuously bullie[d]" him and acted in a threatening and demeaning manner,

including on September 30, 2015, during the steward election. Nebeling stated that Plaintiff's behavior on September 30, 2015, caused him to become so scared that he "began to shake and physically become ill." On November 10, 2015, the Local Union Executive Board informed Plaintiff that it would not certify him as a steward based on his alleged conduct on September 30, 2015. On November 12, 2015, Plaintiff received notice of the charges. On December 23, 2015, Plaintiff received the Nebeling charging documents, including Nebeling's detailed account of the September 30, 2015, incident, a letter from Peter Ficorelli, the prosecutor, identifying the provisions of the CWA Constitution that Plaintiff was alleged to have violated and a list of potential witnesses.

On January 12, 2016, the Local Union informed Plaintiff that Ficorelli had found probable cause to pursue the charges and that an internal union trial was scheduled for January 28, 2016. On January 21, 2016, in response to Plaintiff's request for information similar to what he had requested for the November 13, 2013, trial, the Local Union sent Plaintiff a letter describing the Local Bylaws related to expulsion from membership, the right to trial and rights under the LMRDA. The letter attached Nebeling's complaint and a list of witnesses and, in response to Plaintiff's request for an adjournment, included possible trial dates.

On February 4, 2016, the Local Union provided Plaintiff a revised witness list and informed him that the trial was rescheduled for February 25, 2016. On the same day, Plaintiff emailed the Local Union to request that the trial be postponed because the Local Union had refused to respond to essentially the same list of requests that Plaintiff had made previously. Throughout the spring and into the summer, Plaintiff and Ficorelli corresponded by email and letter about the trial, and Ficorelli provided Plaintiff a revised witness list. In a letter dated March 3, 2016, Ficorelli addressed most of Plaintiff's requests, including a further revised

witness list and a brief description of each witness's anticipated testimony. Ficorelli did not respond to Plaintiff's request to summarize his own (Plaintiff's) defense.

By letter dated June 28, 2016, Ficorelli informed Plaintiff that the trial was rescheduled for July 14, 2016, and the trial was held on that day. Nebeling, Trainor, Nasser, San-dee Nazario and Tiffany Rosario testified. Plaintiff was provided a copy of each witness's signed statement as he or she testified. Several of the witnesses testified about Nebeling's relationship with Plaintiff generally, or events occurring before the September 30, 2015, incident, in addition to testifying about the September 30, 2015, incident. Plaintiff was permitted to cross-examine all of the witnesses and present evidence, but he was not permitted to ask certain questions or present certain evidence, and he was not permitted to present a video from the September 30, 2015, incident until the end of the trial. Plaintiff objected throughout the trial, including to the informality of the proceedings. Plaintiff was found not guilty of bringing the Union or the Local Union into disrepute; guilty of violating the Union's policy on mutual respect; and guilty of violating § 610 of the LMRDA by threatening the use of force or violence or behaving in a coercive or intimidating manner. Plaintiff was suspended from "good standing" membership for two years and fined $1,000.

With respect to the two charges for which Plaintiff was found guilty, Plaintiff appealed the decision to the Local Union's Executive Board, which, on October 14, 2016, dismissed the charge under § 610 of the LMRDA. Plaintiff then appealed the remaining charge to the National Union, which, on March 3, 2017, affirmed the decision but reversed the monetary penalty. On August 6, and August 7, 2017, the CWA National Convention considered and rejected Plaintiff's appeal of the National Union's affirmance of the Local Union's trial verdict.

## II. STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc.*, 875 F.3d at 133 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *See id.* When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted and alteration in original). A pro se plaintiff's papers must be interpreted liberally "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks omitted).

## III. DISCUSSION

Defendant moves for summary judgment as to Plaintiff's two remaining claims under LMRDA § 101(a)(5) and LMRA § 301. Defendant's motion is granted in part and denied in part.

**A. LMRDA § 101(a)(5)**

Section 101(a)(5) states:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing.

7

"[A] union has the power to discipline members by suspending them from union privileges for a reasonable period provided they had violated a legitimate rule aimed at preventing disruption of union business and been afforded a full and fair hearing." *Hughes v. Bricklayers & Allied Craftworkers Local No. 45*, 386 F.3d 101, 105 (2d Cir. 2004).

The "specific charges" provision of § 101(a)(5) requires only that the charges be "specific enough to inform the accused member of the offense that he has allegedly committed." *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245 (1971); *accord Piacente v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 11 Civ. 1458, 2015 WL 5730095, at *14 (S.D.N.Y. Sept. 30, 2015). "The standard is meant to be flexible and '[t]he degree of specificity required . . . will vary from case to case.'" *Kuehne v. Local No. 1 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U.S & Can.*, No. 09 Civ. 1974, 2012 WL 3257949, at *2 (E.D.N.Y. Aug. 8, 2012) (alterations in original) (quoting *Berg v. Watson,* 417 F. Supp. 806, 810 (S.D.N.Y.1976)).

"Union proceedings need not incorporate the same procedural protections found in criminal proceedings in order to satisfy the LMRDA, but 'the basic principles of due process' must be in place." *Gillen v. Int'l Bhd. of Teamsters*, 341 F. App'x 728, 730 (2d Cir. 2009) (summary order) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F. 3d 370, 385 (2d Cir. 2001)). "'The full and fair hearing' aspects of the LMRDA require only that the basic principles of due process be provided in union disciplinary proceedings, rather than the full list of protections afforded, for example, in federal judicial proceedings." *Sampson v. Dist. Council of N.Y.C. & Vicinity of the United Bhd. of Carpenters & Joiners of Am.*, No. 10 Civ. 8120, 2012 WL 4471535, at *6 (S.D.N.Y. Sept. 27, 2012) (citing *Int'l Bhd. of Teamsters*, 247 F.3d at 385–86). A full and fair disciplinary hearing "generally encompass[es] full notice and a reasonable

opportunity to be heard -- including the right to present evidence and the right to confront and cross-examine witnesses." *Piacente*, 2015 WL 5730095, at *14 (internal quotation marks omitted).

### B. LMRA § 301

LMRA § 301 states: "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States . . . ." 29 U.S.C. § 185(a). "Section 301 has been liberally interpreted to extend beyond suits involving an employer and union to include suits by and against individual employees to enforce uniquely personal rights." *Commer v. Am. Fed'n. of State, Cty. & Mun. Emps.*, 272 F. Supp. 2d 332, 338 (S.D.N.Y. 2003) (internal quotation marks omitted), *aff'd sub nom Commer v. Am. Fed'n. of State, Cty. & Mun. Emps., Dist. Counsel 37*, 390 F.3d 203 (2d Cir. 2004). Where, as here, the complaint alleges a due process violation based on a parent union constitution's procedural provisions, such a claim "is actionable only if the violation deprived the party of a full and fair hearing . . . ." *Int'l Bhd. of Teamsters*, 247 F.3d at 387; *accord Piacente*, 2015 WL 5730095, at *10. "A court considering a claim for relief . . . because a party alleges that an internal union disciplinary hearing violated the union's constitution must conduct a two-step inquiry: (1) the court must find that the hearing violated the constitution; and (2) it must find that the violation deprived plaintiffs of a fair trial within the meaning of the [statute]." *Int'l Bhd. of Teamsters*, 247 F.3d at 387; *accord United States v. Int'l Bhd. of Teamsters*, 652 F. Supp. 2d 447, 459–60 (S.D.N.Y. 2009).

#### 1. Plaintiff's 2013 Trial

Summary judgment as to Defendant's 2013 internal union trial is denied as to both the § 101(a)(5) and § 301 claims because a reasonable jury could conclude that Plaintiff was denied

procedural due process under the LMRDA and that Defendant violated the CWA Constitution.[2]

The description of Plaintiff's alleged misconduct in Nasser's charging letter is limited to: "He has gone out of his way to make my working environments uncomfortable . . . . In the past he has made comments about how nice I looked or that he was 'recklessly eyeballing me.'" The only specific allegation of evident misconduct is the "eyeballing" comment, which does not include a date or any description of the circumstances. A reasonable jury could find that such notice lacked the specificity required under both the LMRDA and Article XX, § 1(c) of the CWA Constitution, which requires that charges "contain an allegation of the facts constituting the offense with which the accused is charged and the approximate date or dates said offense is alleged to have occurred." *See Piacente*, 2015 WL 5730095, at *12 ("At a minimum, the accused should be informed of the nature of the offense, the circumstances surrounding the alleged infraction and, as nearly as may reasonably be ascertained, the time and place of the occurrence.") (quoting *Berg*, 417 F. Supp. at 810)); *Kuehne*, 2012 WL 3257949, at *2 (holding written charges to be insufficient because they were based on a "broad two-year time period for the offense and vague notation of various other locations," and "it would have taken little effort for the charging party to include [additional information]" (internal quotation marks and alterations omitted)); *Cefalo v. Moffett*, No. 71 Civ. 786, 1971 WL 797, at *3 (D.D.C. June 28, 1971) (holding written charges to be insufficiently specific where they "contain[ed] no specification of time, place or circumstances surrounding the alleged infraction"). The CWA Executive Board (the National Union), which reversed Plaintiff's guilty verdict and vacated his

---

[2] The National Union's reversing and vacating the decision and penalties is not an impediment to Grant's damages claims in this action. "A union member who has been disciplined in violation of § 101 may recover damages for stigmatization, loss of earnings or similar harm caused by the wrongful conviction, . . . even if the member was acquitted or his conviction was reversed on appeal within the union or to a court." *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228, 1245 (2d Cir. 1979) (internal citations omitted).

punishment, also found that the Nasser charges "contain no dates of when the allegations or offenses are alleged to have occurred," in violation of the CWA Constitution.[3]

A reasonable jury also could find from the evidence that Plaintiff received only five days' notice of the trial date, and that Defendant ignored Plaintiff's email requests to adjourn the trial, which it held in Plaintiff's absence, despite Plaintiff's clear expression of a desire to participate. *Cf. Balaban v. Local 1104, Commc'ns Workers of Am.*, No. 09 Civ. 372, 2009 WL 3254909, at *4 (N.D.N.Y. Oct. 7, 2009) (holding that plaintiff had adequate time to prepare his defense where he received notice of the trial date two weeks before the trial); *United States v. Int'l Bhd. of Teamsters*, 931 F. Supp. 1074, 1110–11 (S.D.N.Y. 1996), *aff'd sub nom. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 120 F.3d 341 (2d Cir. 1997) (holding that plaintiff had adequate time to prepare his defense where he received notice of the charges and evidence two months before the trial date and defendant accommodated plaintiff's scheduling requests); *see also Milne v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, AFL-CIO Local* 15, 156 F. Supp. 2d 172, 180 (D. Conn. 2001) (stating that the relevant question on summary judgment, where plaintiff was tried in absentia, was whether he "knowingly waived" his procedural due process rights). Plaintiff has proffered

---

[3] Plaintiff argues that there were other violations of the CWA Constitution, including the failure to provide certain pretrial preparation material identified in a document titled "Local Trial Procedures, Article XX CWA Constitution." Article XX, § 3(a) of the CWA Constitution states that "[t]he Bylaws or Rules of a Local shall specify the manner in which an accused person shall be tried and must conform [to specified] minimum standards." The Local Trial Procedures, which specify the procedures for conducting Union trials, do not appear to be part of the CWA Constitution, and therefore cannot be the basis for a § 301 claim. As the Court explained in its Opinion and Order dated December 1, 2017, which dismissed the § 301 claim insofar as it is based on alleged violations other than of the CWA Constitution, union members' disputes regarding breaches of local union constitutions "do not fall within the boundaries of § 301 because such disputes are between an individual member and a union." *Grant v. Commc'ns Workers of Am., Local 1101*, No. 16 Civ. 9553, 2017 WL 6000605, at *8 (S.D.N.Y. Dec. 1, 2017) (quoting *Dinuzzo v. Local 79, Laborers Int'l Union of N. Am., AFL-CIO*, No. 03 Civ. 4112, 2003 WL 21378596, at *3 (S.D.N.Y. June 16, 2003)).

sufficient evidence to create a triable issue as to whether Defendant violated § 101(a)(5) by failing to provide Plaintiff more specific charges and holding the trial in his absence. Additionally, because a reasonable jury could find that Defendant both deprived Plaintiff of a full and fair hearing and violated the CWA Constitution, summary judgment is denied as to the § 301 claim. *See Int'l Bhd. of Teamsters*, 247 F.3d at 387; *accord Piacente*, 2015 WL 5730095, at *10.

Defendant's argument that Plaintiff "was well aware of all charges" is unpersuasive. Courts in the Second Circuit have found that § 101(a)(5) is violated where the plaintiff did not receive specific charges, regardless of whether the plaintiff was aware of the of the nature of the charges at the time of trial. *See, e.g.*, *Reilly v. Sheet Metal Workers' Int'l Ass'n, AFL-CIO*, 488 F. Supp. 1121, 1127 (S.D.N.Y. 1980) ("The independent knowledge of the accused concerning the circumstances of his own alleged wrongdoing, however, will not excuse the defendant's failure to comply with the requirements of the [LMRDA]."); *Berg*, 417 F. Supp. at 811 ("[A]n ex post facto showing that the accused had knowledge of the events surrounding the alleged offenses cannot cure the lack of adequate written notice made mandatory by the statute" (internal quotation marks omitted)).

Similarly unpersuasive is Defendant's argument that Plaintiff "had no interest in actually holding his trial" and "simply did not show up." The undisputed evidence shows that, in the weeks leading up to the trial, Plaintiff was an active participant in his case. The parties' correspondence on the day of the trial also shows that, contrary to Defendant's assertion, Plaintiff wanted to participate in the trial but did not feel prepared to do so. Defendant's contention that Plaintiff rejected an opportunity to adjourn the trial the day before is insufficient to defeat summary judgment, where, as here, Plaintiff has presented evidence that he received

notice of the trial date only five days earlier and, after learning of the evidence against him a few hours before the start of the trial, expressed a desire for the trial to proceed at a later date, when he was better prepared. *Cf. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 19 F. 3d 816, 823 (2d Cir. 1994) (rejecting § 101(a)(5) claim where plaintiff did not "raise the argument of insufficient time to prepare at the hearing" or "move for an adjournment or continuation of the hearing in order to prepare further"). Nor was it necessary for Plaintiff to appear at the hearing solely for the purpose of requesting an adjournment when he repeatedly had requested a postponement earlier that day and those requests fell on deaf ears.

Also unavailing is Defendant's argument that Plaintiff's claim based on the 2013 trial is precluded by the doctrine of accord and satisfaction. "Under New York law, an accord and satisfaction consists of (1) an agreement that a stipulated performance will be accepted, in the future, in lieu of an existing claim, and (2) execution of the agreement." *Platte River Ins. Co. v. Khan*, No. 13 Civ. 3265, 2015 WL 4104687, at *10 (E.D.N.Y. July 7, 2015) (citing *Denburg v. Parker Chapin Flattau & Klimpl*, 624 N.E.2d 995, 1001 (N.Y. 1993) (explaining that "[a]n accord is an agreement that a stipulated performance will be accepted, in the future, in lieu of an existing claim" and "[e]xecution of the agreement is a satisfaction"). Defendant's argument in substance is that Plaintiff settled and released his claims regarding the 2013 trial. *See, e.g.*, *Broyhill Furniture Indus., Inc. v. Hudson Furniture Galleries, LLC*, 877 N.Y.S.2d 72, 74 (1st Dep't 2009) (stating that a settlement agreement and release may operate as an accord and satisfaction of the matter settled). "[A] valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011) (internal quotation marks and citations

13

omitted). "If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties." *Id.* (internal quotation marks and citations omitted).

Here, the language of the agreement does not unambiguously reflect that Plaintiff released the claims asserted in this action arising out of the 2013 trial. The parties do not dispute that their agreement is memorialized in Grant's May 1, 2014, confirming email, which states in full:

> I am just putting in writing the agreement we made at the district office. *I agreed to drop all my charges I have filed against any officers of local 1101* and the local agreed to withdraw any charges filed against me. We agreed to move forward and foster a[n] environment of mutual respect.
> I am cool with that and *I will also drop my complaint I filed in southern manhattan federal court against the local.* Also, I was advised Bill did not want to drop his complaint he filed with the eeoc against the local. I stated I was cool with moving forward with this as I felt his complaint was friv[o]lous and as long as the local defended me as a[n] employee of the local and not enter into mediation without defending me properly, I am ok moving forward in the best interest of the union (emphasis added).

Far from the language of a typical release, Plaintiff did not agree to release any and all claims he had against the Local Union in connection with the 2013 trial. He merely agreed to drop the Complaint raising some of those claims. As it turned out, he did not dismiss the claims, but instead did not oppose the motion to dismiss, which was granted without prejudice as to the LMRDA claims. On these facts, a reasonable jury could find that there was no accord and satisfaction barring Plaintiff's claim in this case arising from the 2013 trial.

### 2. Plaintiff's 2016 Trial

Defendant moves for summary judgment with respect to Plaintiff's 2016 trial. The motion is granted as to both the § 101(a)(5) and § 301 claims.

First, no reasonable factfinder could conclude that the Nebeling charges were not

sufficiently specific or that Plaintiff was given inadequate time to prepare for trial. On November 12, 2015, Plaintiff received notice of the charges. On December 23, 2015, Plaintiff received the Nebeling charging documents, including Nebeling's detailed account of the September 30, 2015, incident, a letter from Ficorelli (the prosecutor) identifying the provisions of the CWA Constitution that Plaintiff was accused of violating and a list of potential witnesses. In a letter to Plaintiff dated March 3, 2016, Ficorelli provided a revised witness list and identified the subject of each witness's anticipated testimony. The trial, which was repeatedly postponed at Plaintiff's request, was not held until July 14, 2016, more than seven months after Plaintiff first received the Nebeling charging documents. Plaintiff received notice of the July 14, 2016, trial date on June 28, 2016. As a matter of law, Plaintiff was not denied his due process rights under §§ 101(a)(5)(A) and (B) regarding the 2016 trial. *See, e.g.*, *Int'l Bhd. of Teamsters*, 931 F. Supp. at 1110–11 (holding that the documents plaintiff received "surpass[ed]" the LMRDA's "specific charges" requirement where they stated the constitutional provisions plaintiff allegedly violated and the time period of the alleged violation and included a copy of the prosecutor's exhibits; and that plaintiff received "ample opportunity" to prepare his defense where he received these documents more than two months before the first day of his trial).

Plaintiff's argument that the Nebeling charges were "vague" because they included the statement, "Doug Grant continuously bullies me with his demeaning and threatening behavior," lacks merit. With the exception of this sentence, the Nebeling charges exclusively describe the September 30, 2015, incident. No reasonable jury could find that this sentence, which offers context for the rest of the allegations, provided an additional basis for Plaintiff's trial.

Plaintiff's argument that he was deprived of an opportunity to prepare his defense also is unpersuasive. Plaintiff argues that he was entitled to receive before trial various materials to

prepare. Plaintiff does not cite any law suggesting that he was entitled to these materials. Likewise, the CWA Constitution does not afford Plaintiff the right to the specific documents and information that he requested. The provision of the Local Trial Procedures to which Plaintiff cites, in context, appears to be only a suggestion for how to prepare for a trial; Plaintiff's list of requests appears in the section called "Pre-Trial Preparation, Accuser, Prosecutor, Accused, Counsel for Accused," and the sentence preceding the list states: "Some type of an outline of the case would be very helpful to the accuser and prosecutor and to the accused and his/her counsel." The list also includes, for example, a "summar[y] of the defense." The section includes no language from which a reasonable jury could conclude that Plaintiff was entitled to obtain all of the items in his list of requests. Nor could a reasonable factfinder conclude that the Local Trial Procedures obligated Defendant to provide Plaintiff a summary of his own defense or that the failure to do so deprived Plaintiff of an opportunity to prepare his defense.

Second, no reasonable jury could find that Plaintiff did not receive a full and fair trial. Plaintiff had ample notice of the proceedings, which were adjourned multiple times over the course of more than six months, at Plaintiff's request. Plaintiff was given a copy of the charging documents well in advance of the trial, as well as witness lists and general descriptions of each witness's anticipated testimony. During the course of an approximately five-hour trial, Plaintiff vigorously cross-examined each of the witnesses and presented evidence, including a short video from the day of the incident.

Plaintiff's assertion that he was deprived of a fair trial because he was not permitted to ask certain questions or present certain evidence is without any merit. The undisputed evidence -- an audio recording of the trial (filed at the Court's request for this motion, together with audio of the 2013 trial) -- shows that Plaintiff was precluded from asking only repetitive or irrelevant

16

questions. He was admonished repeatedly by the presiding officer for badgering the witnesses and asking questions regarding events outside of the scope of the charges. Plaintiff also was not precluded from presenting any evidence; although he was not permitted to present the video from the day of the incident during his cross-examination, he was allowed to present it during his direct case.

Plaintiff also argues that the prosecutor veered outside of the scope of the charges in an effort to try Plaintiff on the 2013 Nebeling charges that Defendant ultimately did not bring to trial. The undisputed evidence does not support this contention. Although the prosecutor asked some of the witnesses for background information about Plaintiff's relationship with Nebeling, the focus of the prosecutor's case was the September 30, 2015, incident. If anything, it was Plaintiff who sought to ask the witnesses about extraneous matters, including repeatedly asking the witnesses about the Local 1101 Executive Board, the reasons for his not being certified as a steward after winning his election and a National Labor Relations Board complaint Plaintiff had filed regarding a grievance about AT&T's "exchange time policy." Based on the foregoing, no reasonable jury could find that Plaintiff did not receive a full and fair hearing under § 101(a)(5), and summary judgment is granted on that claim.

Because there is no genuine issue of material fact as to whether Plaintiff was deprived of a full and fair hearing under § 101(a)(5), Plaintiff's § 301 claim fails as a matter of law and summary judgment is granted. *See Sampson*, 2012 WL 4471535, at *7 (dismissing § 301 claim where plaintiff's underlying § 101(a)(5) claim for deprivation of a full and fair hearing failed as a matter of law).

## IV. CONCLUSION

Defendant's motion for summary judgment is **GRANTED** with respect to the 2016 trial and **DENIED** with respect to the 2013 trial. Defendant's motion for oral argument is **DENIED** as moot. The Clerk of Court is directed to close the motion at Docket No. 137 and mail a copy of this Order to pro se Plaintiff.

Dated: March 29, 2018
New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**